UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GOVERNMENT ACCOUNTABILITY & OVERSIGHT, <br><br> *Plaintiff*, <br><br> v. <br><br> SECURITIES AND EXCHANGE COMMISSION, <br><br> *Defendant*. | Civil Action No. 23 - 2462 (LLA) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Government Accountability & Oversight ("GAO") brings this action against the U.S. Securities and Exchange Commission ("SEC"), alleging violations of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, arising out of its request for certain agency records, ECF No. 1. This matter is before the court on the SEC's motion for summary judgment. ECF No. 12. For the reasons explained below, the court grants in part and denies in part the SEC's motion for summary judgment.

### I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

GAO is a nonprofit research, public policy, and public interest litigation center "dedicated to education regarding responsible regulation and transparency in government." ECF No. 1 ¶ 4. In large part, GAO works to achieve its mission by requesting public records that it believes "illuminat[e] how policymakers use public resources, and with whom." *Id.* In July 2023, GAO submitted a FOIA request to the SEC, seeking

> all electronic mail a) sent to, from or which copies (whether as cc: or bcc:) Allison Herren Lee, Gary Gensler, Mika Morse and/or

> Kristina Wyatt, which b) also i) includes, anywhere in an email or email 'thread', whether as a correspondent's address or otherwise in the body of, e.g., a forwarded email, i) Ravenel and/or ii) @boundarystone.com, and ii) is dated at any time from September 1, 2021 through July 14, 2023, inclusive.

ECF No. 12-1 ¶ 1; ECF No. 13-1 ¶ 1; *see* ECF No. 12-2, at 5-14.[1]

The SEC acknowledged the request and assigned it a tracking number. ECF No. 13-1 ¶ 2. In August 2023, having received no final determination from the SEC, GAO filed this action. ECF No. 1. After the SEC filed its answer, ECF No. 5, the parties met and conferred, narrowed the scope of the FOIA request, and agreed upon a production schedule, ECF No. 6.

In December 2023, the case was directly reassigned to the undersigned. Dec. 14, 2023 Docket Entry. As production continued, the SEC informed GAO that it was withholding information pursuant to FOIA Exemption 5. ECF No. 13-1 ¶¶ 5-8, 12-15.[2] In July 2024, the SEC provided GAO with a preliminary *Vaughn* index, which it supplemented the following month. *Id.* ¶ 11; ECF No. 11, at 3. Over the course of production, the SEC provided GAO with 792 pages of responsive records. ECF No. 14, at 1. After GAO continued to challenge information that the SEC had withheld under Exemption 5, the parties agreed to proceed to summary judgment. ECF No. 11, at 3-4. The SEC accordingly moved for summary judgment, ECF No. 12, and the matter is fully briefed, ECF Nos. 12, 14, 15.

---

[1] GAO simultaneously made a second FOIA request to the SEC, but it does not challenge any redactions to disclosures made in response to that request. ECF No. 14, at 1 n.1.

[2] While the SEC also withheld information under Exemption 6, GAO does not challenge those withholdings on summary judgment. ECF No. 14, at 4.

## II.    LEGAL STANDARD

The purpose of FOIA is "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Am. C.L. Union v. U.S. Dep't of Just.*, 655 F.3d 1, 5 (D.C. Cir. 2011) (quoting *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976)).  Congress nonetheless included nine exemptions to disclosure that "are intended to balance the public's interest in governmental transparency against the legitimate governmental and private interests [that] could be harmed by release of certain types of information." *Tipograph v. U.S. Dep't of Just.*, 83 F. Supp. 3d 234, 238 (D.D.C. 2015) (alteration in original) (internal quotation marks omitted) (quoting *United Techs. Corp. v. U.S. Dep't of Def.*, 601 F.3d 557, 559 (D.C. Cir. 2010)).

"[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Off. of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011).  Summary judgment may be awarded to the agency if it can demonstrate that no material facts are in dispute, that it conducted an adequate search for responsive records, and that each record has either been produced or is exempt from disclosure. *Jud. Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 59 F. Supp. 3d 184, 189 (D.D.C. 2014).  The agency invoking a FOIA exemption bears the burden of demonstrating that it applies. *U.S. Dep't of Just. v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 755 (1989).  This burden is met when agency affidavits or declarations "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (quoting *Miller v. Casey*, 730 F.2d 773, 776 (D.C. Cir. 1984)).  The agency may also carry its burden "by providing the requester with a *Vaughn* index, which must adequately describe each withheld document, state which exemption the agency claims for each

withheld document, and explain the exemption's relevance." *Johnson v. Exec. Off. for U.S. Att'ys*, 310 F.3d 771, 774 (D.C. Cir. 2002).

Even where a FOIA exemption applies, an agency may only withhold records if it "reasonably foresees that disclosure would harm an interest protected by [the] exemption." 5 U.S.C. § 552(a)(8)(A)(i)(I); *see Reps. Comm. for Freedom of the Press v. Fed. Bureau of Investigation*, 3 F.4th 350, 369 (D.C. Cir. 2021). Additionally, "a court 'must make specific findings' as to whether any 'reasonably segregable portion of a record' is non-exempt and releasable '[b]efore approving the application of a FOIA exemption.'" *Khatchadourian v. Def. Intel. Agency*, 453 F. Supp. 3d 54, 65 (D.D.C. 2020) (alteration in original) (quoting *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007)); *see* 5 U.S.C. § 552(b). "To successfully challenge an agency's showing that it complied with the FOIA, the plaintiff must come forward with 'specific facts' demonstrating that there is a genuine issue with respect to whether the agency has improperly withheld extant agency records." *Manna v. U.S. Dep't of Just.*, 106 F. Supp. 3d 16, 18 (D.D.C. 2015) (internal quotation marks omitted) (quoting *Span v. U.S. Dep't of Just.*, 696 F. Supp. 2d 113, 119 (D.D.C. 2010)).

### III.   DISCUSSION

The parties dispute the application of FOIA Exemption 5 to several emails within the SEC's possession that are responsive to GAO's request. FOIA Exemption 5 permits an agency to withhold "intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). To fall within the scope of the exemption, a document's "source must be a Government agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." *U.S. Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532

U.S. 1, 8 (2001).  Here, the SEC relies on the deliberative-process privilege as the basis for its invocation of Exemption 5.[3]

"The deliberative process privilege 'covers "documents reflecting advisory opinions, recommendations, and deliberations that are part of a process by which Government decisions and policies are formulated."'"  *Reps. Comm. for Freedom of the Press*, 3 F.4th at 361 (quoting *Klamath Water Users Protective Ass'n*, 532 U.S. at 8).  Its purpose is to "prevent injury to the quality of agency decisions" that might otherwise be chilled or tempered by the possibility of disclosure.  *Nat'l Lab. Rels. Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975).  To fall within the protection of the privilege, a document must be both "predecisional," meaning that it was created prior to the adoption of a particular position or policy, and "deliberative," meaning that it reflects "the give-and-take of the consultative process."  *Jud. Watch, Inc. v. U.S. Dep't of Def.*, 847 F.3d 735, 739 (D.C. Cir. 2017) (quoting *Pub. Citizen, Inc. v. Off. of Mgmt. & Budget*, 598 F.3d 865, 874 (D.C. Cir. 2010)).

Whether the deliberative-process privilege applies to a given document is highly dependent on the circumstances in which it was created.  *See Jud. Watch, Inc. v. U.S. Dep't of Just.*, 20 F.4th 49, 55-57 (D.C. Cir. 2021).  The agency invoking the privilege bears the burden of proof and must explain "(1) 'what deliberative process is involved,' and (2) 'the role played by the documents in issue in the course of that process.'"  *Id.* at 55 (internal quotation marks omitted) (quoting *Senate of P.R. ex rel. Jud. Comm. v. U.S. Dep't of Just.*, 823 F.2d 574, 585-86 (D.C. Cir. 1987)).  The agency may also explain the "decisionmaking authority" of the author of the document and the

---

[3] The SEC also defended its withholding of one email based on the attorney-work-product privilege, ECF No. 12-5, at 13-16; *see* ECF No. 12-4 ¶ 6, but GAO does not contest that withholding, ECF No. 14, at 4.

"relative positions in the agency's chain of command occupied by the document's author and recipient" to support its invocation of the exemption. *Id.* (quoting *Senate of P.R.*, 823 F.2d at 586).

In arguing that the deliberative-process privilege applies, the SEC contends that the materials it seeks to withhold are both "predecisional" and "deliberative." ECF No. 12-5, at 8 (quoting *Amiri v. Nat'l Sci. Found.*, 664 F. Supp. 3d 1, 13 (D.D.C. 2021), *aff'd*, No. 21-5241, 2022 WL 1279740 (D.C. Cir. Apr. 28, 2022)). GAO responds that the SEC has not carried its burden of establishing that the privilege applies on the basis of its *Vaughn* index and supporting declarations. ECF No. 14, at 4-11. It also argues that the SEC has not sufficiently articulated any foreseeable harm that might result from the release of the information at issue. *Id.* at 11-14. GAO does not contend that, if the SEC has alleged sufficient foreseeable harm, the agency failed to appropriately segregate nonexempt information, but this is an argument the court must consider *sua sponte*. *Rudometkin v. United States*, 140 F.4th 480, 495 (D.C. Cir. 2025). The court considers each argument in turn.

          **A.**    **Sufficiency of the SEC's *Vaughn* Index and Declarations**

To substantiate the withholding of information pursuant to FOIA Exemption 5, an agency may provide a *Vaughn* index and/or declarations that "adequately describe each withheld document, state which exemption the agency claims for each withheld document, and explain the exemption's relevance." *Johnson*, 310 F.3d at 774. "There is no set formula for a *Vaughn* index; so long as the agency provides the Court with materials providing a 'reasonable basis to evaluate the claim of privilege,' the precise form of the agency's submission . . . is immaterial." *Skull Valley Band of Goshute Indians v. Kempthorne*, No. 04-CV-339, 2007 WL 915211, at *5 (D.D.C. Mar. 26, 2007) (quoting *Gallant v. Nat'l Lab. Rels. Bd.*, 26 F.3d 168, 173 (D.C. Cir. 1994)). Provided that an agency declaration is "'relatively detailed and non-conclusory,'" it is

6

"accorded 'a presumption of good faith,' which can only be rebutted with clear evidence of bad faith." *Bigwood v. U.S. Dep't of Def.*, 132 F. Supp. 3d 124, 136 (D.D.C. 2015) (quoting *SafeCard Servs. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)).

GAO argues that the SEC has not carried its burden of demonstrating that the deliberative-process privilege applies because "its *Vaughn* Index and its declarations do not identify the role of any alleged deliberators in the chain of deliberation, and instead baldly assert that 'staff' [were] deliberating." ECF No. 14, at 5. In GAO's view, the SEC's failures "to explain who was making recommendations to whom" and to clarify whether those "recommenders were inside or outside the agency or what the relevant chain of authority at the agency [was]" renders its *Vaughn* index and declarations legally insufficient. *Id.* (internal quotation marks omitted). The court disagrees.

To begin, there is no "blanket requirement that a *Vaughn* Index must contain the roles of every individual mentioned in the withheld records." *Energy Pol'y Advocs. v. Sec. & Exch. Comm'n*, No. 23-CV-507, 2024 WL 4512386, at *6 (D.D.C. Oct. 17, 2024). While information about each individual's role may aid a court in determining whether the deliberative-process privilege applies, it is not necessary where, as here, the *Vaughn* index and supporting declaration from Mark Tallarico, an attorney in the SEC's Office of the General Counsel, clarify that every communication in question was between SEC staff members. *See* ECF No. 12-3 ¶ 14; ECF No. 12-4. While GAO argues that additional information is necessary because "recommendations from subordinates to superiors lie at the core of the deliberative-process privilege," ECF No. 14, at 5 (quoting *Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364, 370 (2020)), the D.C. Circuit has clarified that "[t]here is no such directional precondition to protection under the deliberative process privilege," *Reps. Comm. for Freedom of the Press*, 3 F.4th at 364. In any case, "the

7

decisionmaking authority vested in" the authors and recipients of the emails and their "relative positions in the chain of command," *Jud. Watch, Inc.*, 20 F.4th at 55 (quoting *Senate of P.R.*, 823 F.2d at 586), confirm that the emails were deliberative, *see* ECF No. 15, at 2-3 (explaining that the Commission "has final decision-making authority over SEC rules" and that the SEC staff members who drafted and received the emails at issue "provided advice and assistance to the Commission . . . prior to the Commission's vote on the rulemakings and the release of the rules").

Next, GAO contends that the SEC has not shown that the withheld materials concerned "'deliberations' or similar activities related to *final* or *formal* agency decisionmaking or policy," ECF No. 14, at 4, as opposed to "'peripheral'" discussions, *id.* at 5 (quoting *Ethyl Corp. v. U.S. Env't Prot. Agency*, 25 F.3d 1241, 1248 (4th Cir. 1994)). In its view, the *Vaughn* index fails to "'identify[] the decision[s] . . . to which the record[s] pertain[],'" and "some policy decisions are just too trivial to be the 'stuff' of deliberative process privilege." *Id.* at 6 (quoting *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*, 45 F.4th 963, 972 (D.C. Cir. 2022)). GAO relatedly complains that both the *Vaughn* index and declarations make "boilerplate" and repetitive assertions that are insufficiently detailed. *Id.* at 7-11. The SEC responds that there is "no requirement" that it "specifically name the various proposed rules" that are discussed in its withheld materials, and it maintains that its *Vaughn* entries provide sufficient information about the deliberations in question. ECF No. 15, at 3-5, 4 n.2. The court determines that the SEC has provided sufficient information in the *Vaughn* index and Mr. Tallarico's declaration for it to conclude that the withheld records concerning the climate rulemaking are covered by the deliberative-process privilege but that the entries concerning "various rulemakings," ECF No. 12-4 ¶¶ 15-17, fall short.

The majority of the entries in the *Vaughn* index specify that the withheld record concerned the climate rulemaking. *Id.* ¶¶ 1-5, 7-14, 17(a). Each of these entries provides sufficient

information for the court to discern whether the deliberative-process privilege applies, especially when read in conjunction with Mr. Tallarico's declaration. ECF No. 12-3. For example, the first entry in the *Vaughn* index describes a series of "emails among SEC staff . . . seeking particular information in the context of SEC climate rulemaking." ECF No. 12-4 ¶ 1. The entry specifies the SEC employees who were on the email chain and the date and times that the emails were sent. *Id.* This is sufficient information for the court to determine that the emails were deliberative—related to the climate rulemaking—and predecisional—in advance of the climate rulemaking. The same is true for the remainder of the *Vaughn* index entries concerning the SEC's climate rulemaking. *Id.* ¶¶ 2-5, 7-14, 17(a).[4] Additionally, as Mr. Tallarico explains in his declaration, the withheld emails "reflect discussions that occurred prior to the agency's finalizing of the proposed climate rules," including "opinions about information provided by third parties," "preliminary thoughts and recommendations on the use of particular data and information," and "potential revisions" to a release proposing a climate rule. ECF No. 12-3 ¶ 14. The *Vaughn* index and Mr. Tallarico's declaration therefore demonstrate that the withheld emails bear on "'the formulation or exercise of . . . policy-oriented *judgment*' or 'the process by which *policy* is formulated.'" *Mapother v. Dep't of Just.*, 3 F.3d 1533, 1539 (D.C. Cir. 1993) (alteration in original) (quoting *Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1435 (D.C. Cir.

---

[4] GAO points to entries in the *Vaughn* index where the SEC withheld emails about whether its Chair should accept certain speaking engagements, ECF No. 12-4 ¶¶ 9, 14, contending that they are "too trivial" to be covered by the deliberative-process privilege, ECF No. 14, at 6. The court disagrees. The SEC explains in these entries that the emails "reflect[] staffs' thoughts about the impact of the SEC's speaking engagement invitation on the SEC's climate rule." ECF No. 12-4 ¶ 9. Courts have found similar emails to be protected by the deliberative-process privilege. *See, e.g.*, *Jud. Watch, Inc. v. U.S. Dep't of Just.*, 306 F. Supp. 2d 58, 70 (D.D.C. 2004) (permitting, under the deliberative-process privilege, the withholding of notes concerning whether the Attorney General should accept a speaking engagement).

1992)). And as for GAO's complaint that the SEC's justifications in the *Vaughn* index are repetitive, ECF No. 14, at 8, it is unsurprising that the same reasons would justify withholding multiple records about the same rulemaking; indeed, "there is no bar to using repetitive language to describe similar documents," *Am. Oversight v. U.S. Dep't of the Treasury*, 474 F. Supp. 3d 251, 272 (D.D.C. 2020); *see Chavis v. U.S. Dep't of Just.*, No. 20-CV-638, 2021 WL 1668069, at *10 (D.D.C. Apr. 18, 2021) ("FOIA does not prohibit the [agency] from recycling explanations if the same reasoning applies to withhold information across multiple documents."). Accordingly, with regard to the records concerning the climate rulemaking, upon review of the entire record, including the *Vaughn* index and Mr. Tallarico's declaration, the court determines that the SEC has carried its burden of showing that the deliberative-process privilege applies.[5] *See Energy Pol'y Advocs. v. Sec. & Exch. Comm'n*, 699 F. Supp. 3d 56, 64-65 (D.D.C. 2023) (finding that the deliberative-process privilege applied to similar SEC documents regarding the climate rulemaking); *Energy Pol'y Advocs.*, 2024 WL 4512386 at *6-7 (same).

The SEC's three *Vaughn* index entries "regarding various rulemakings," *see* ECF No. 12-4 ¶¶ 15-17, present a closer question. Unlike the other entries, which specify that they pertain to the climate rulemaking, these three are considerably less specific about the subject matter of the withheld records. The D.C. Circuit has instructed that "[a]ssessing whether a record is

---

[5] One of the entries in the *Vaughn* index is an email about "SEC and [Department of] Treasury personnel decisions and the job prospects of an SEC staff member," which the SEC explains it withheld because "it reflects the Treasury and SEC's considerations in connection with a personnel decision" and the "discussion preceded the personnel decision." ECF No. 12-4 ¶ 18. GAO does not make an argument regarding this document specifically, except to take issue with the fact that the subject line of the email is partially redacted in the *Vaughn* index. ECF No. 14, at 4. The court is satisfied with the amount of information provided in the *Vaughn* index, and it concludes that the deliberative-process privilege applies to the withheld email. Additionally, the court is not concerned with the partially redacted subject line, which does not impede the court's ability to determine that the documents are covered by the privilege.

pre-decisional or deliberative necessarily requires identifying the decision (and the associated decisional process) to which the record pertains." *Citizens for Resp. & Ethics in Wash.*, 45 F.4th at 972; *see Senate of P.R.*, 823 F.2d at 585 (holding that the court was "not positioned" to determine the applicability of the deliberative-process privilege where it had to "search in vain through the supporting material submitted by the [agency] for any identification of the specific final decisions to which the advice or recommendations contained in the withheld documents contributed"). And while "[t]he D.C. Circuit has recognized that an agency need not pinpoint an ultimate decision to which the document contributes to assert the privilege," *Greenspan v. Bd. of Governors of Fed. Rsrv. Sys.*, 643 F. Supp. 3d 176, 193 (D.D.C. 2022), "the agency withholding responsive records under the deliberative process privilege still 'must show that the document was generated as part of a *definable* decision-making process' even where the ultimate agency decision is not identified," *Inst. for Energy Rsch. v. Fed. Energy Regul. Comm'n*, No. 22-CV-2114, 2023 WL 6121878, at *8 (D.D.C. Sep. 19, 2023) (quoting *100Reporters LLC v. U.S. Dep't of Just.*, 248 F. Supp. 3d 115, 151 (D.D.C. 2017)).

For two of the entries in question, the SEC explains that "[i]n an email among SEC staff, a discussion of key issues, noteworthy updates, and upcoming meetings regarding various rulemakings was withheld" because the discussion "reflects staff members' thoughts and recommendations regarding the SEC's process, considerations, and priorities in developing various rulemakings." ECF No. 12-4 ¶¶ 15, 17. For the third entry, the SEC explains that "[i]n an email among SEC staff, a discussion regarding various rulemakings was withheld" because the discussion "reflects a staff member's opinion on the substance of various rulemakings." *Id.* ¶ 16. For each entry, the SEC asserts that the withheld information is predecisional because it concerns "discussion in developing the SEC's rulemakings prior to their release." *Id.* ¶¶ 15-17.

As an initial matter, the SEC's failure to provide information about the subject matter of the rulemakings at issue leaves the court with no means to evaluate whether the conversations were indeed predecisional aside from the agency's say-so. ECF No. 12-3 ¶ 14. But even if the court were to look past this obvious deficiency, it is not clear that "a discussion of key issues, noteworthy updates, and upcoming meetings regarding various rulemakings" entails any deliberative process at all, particularly when the court has no information regarding what "issues," "updates," and "rulemakings" were discussed. "[W]here no factual support is provided for an *essential* element of the claimed privilege or shield, the label 'conclusory' is surely apt." *Senate of P.R.*, 823 F.2d at 585. And while the SEC claims that these discussions "reflect[] staff members' thoughts and recommendations regarding the SEC's process, considerations, and priorities in developing various rulemakings," that is just another vague statement. Without further explanation, the court cannot assess how disclosure of these records would reveal staff members' "thoughts and recommendations" in a way that would affect the development of any rulemaking. If the SEC wishes to withhold these records, it must provide the court with sufficient information to confirm that they reflect "the give-and-take of the consultative process." *Jud. Watch, Inc.*, 847 F.3d at 739.

### B.      Foreseeable Harm and Segregability

#### 1.      Foreseeable Harm

"In the context of withholdings made under the deliberative process privilege, the foreseeability requirement means that agencies must concretely explain how disclosure 'would'—not 'could'—adversely impair internal deliberations." *Reps. Comm. for Freedom of the Press*, 3 F.4th at 369-70. Specifically, the agency must provide a "focused and concrete demonstration of why disclosure of the particular type of material at issue will, in the specific context of the agency action at issue, actually impede those same agency deliberations going forward." *Id.* at 370. To

carry this burden, "the agency must articulate the 'link between the specified harm and specific information contained in the material withheld.'" *Rudometkin*, 140 F.4th at 492-93 (quoting *Reps. Comm. for Freedom of the Press*, 3 F.4th at 371).

Relying on Mr. Tallarico's declaration, the SEC sufficiently makes this showing as to its withholdings of records concerning the climate rulemaking. Mr. Tallarico avers that SEC "[s]taff at all levels can have a variety of views and opinions on a proposed rule that they must share and discuss to determine the best result." ECF No. 12-3 ¶ 19. In the process of rulemaking, staff "may change their views of what approach is best" and "determine that certain ideas have no merit." *Id.* In Mr. Tallarico's view, the possible harm posed by disclosure is firm: "if SEC staff knew . . . release [of their predecisional discussion] was possible, they would be reluctant to record their views and engage in open discussion during the rule drafting process," and this chilling effect "could adversely affect rulemaking because good solutions are often found as staff share all possible approaches, even those that are ultimately dismissed." *Id.* ¶ 20. Additionally, Mr. Tallarico explains that a contrary approach might also slow down the rulemaking process and lead to public confusion. *Id.* Because Mr. Tallarico's declaration ties "specified harm[s]"— missing policy solutions, slower rulemaking, and public confusion—to the disclosure of "specific information," including evaluations of and recommendations regarding a specific rulemaking, it

sufficiently demonstrates that foreseeable harm would result from disclosure of the information in question.[6]

However, for the same reasons that the SEC's general references to "various rulemakings" in the three entries in the *Vaughn* index discussed earlier, *see supra* pp. 10-12, do not suffice for purposes of assessing application of the deliberative-process privilege, they also fail to provide the information necessary for the court to determine that disclosure of the withheld information could result in foreseeable harm.  Put simply, with so little information about the kind of rulemaking involved in the withheld records, the court cannot determine with any level of certainty whether the harms Mr. Tallarico describes are present.  Thus, even if the court had not determined that those entries were facially insufficient, it could not permit the application of Exemption 5 to the information described therein because the entries do not support a finding of foreseeable harm.

### 2.     Segregability

"After the Government shows that a record includes exempt information, 'it is entitled to a presumption that it complied with the obligation to disclose reasonably segregable material.'" *Rudometkin*, 140 F.4th at 494 (internal quotation marks omitted) (quoting *Flyers Rts. Educ. Fund,*

---

[6] In *Energy Policy Advocates*, another FOIA action against the SEC involving documents related to the climate rulemaking, the court determined that a substantially similar declaration made the necessary showing of foreseeable harm.  2024 WL 4512386, at *7-8.  In arguing that Mr. Tallarico's declaration is insufficient, GAO cites cases where the agency's explanation of foreseeable harm was "'wholly generalized and conclusory'" or "'vague' and 'insufficiently specific,'" and it contends that the SEC's justification here is even less specific.  ECF No. 14, at 12-14 (first quoting *Reps. Comm. for Freedom of the Press*, 3 F.4th at 370; then quoting *Project on Gov't Oversight, Inc. v. U.S. Dep't of Homeland Sec.*, 657 F. Supp. 3d 50, 63-64 (D.D.C. 2023)).  However, as another court in this district has explained, the cases cited by GAO "applied the deliberative process privilege to factual descriptions and expert reports—in other words, content that is less obviously deliberative" than internal discussions of proposed rulemaking like those at issue here.  *Energy Pol'y Advocs.*, 699 F. Supp. 3d at 66.

*Inc. v. Fed. Aviation Admin.*, 71 F.4th 1051, 1057-58 (D.C. Cir. 2023)). "However, despite this presumption, a district court must nonetheless 'mak[e] an express finding on segregability.'" *Id.* (alteration in original) (quoting *Machado Amadis*, 971 F.3d at 371). In making this determination, the court must "consider[] . . . whether any portion of a document, although exempt, could be segregated and released without causing foreseeable harm." *Id.*; *see Leopold v. Dep't of Just.*, 94 F.4th 33, 37 (D.C. Cir. 2024).

In his declaration, Mr. Tallarico explains that the SEC conducted a "line-by-line review" of the withheld documents, "determine[d] whether any portions of those records could be segregated for public disclosure," and released the relevant information. ECF No. 12-3 ¶ 25. He adds that the SEC has further reviewed all documents responsive to the request and "disclosed all portions of documents that it reasonably foresees could be disclosed without causing harm to the SEC's interests protected by Exemption 5." *Id.* ¶ 26. Given the presumption of compliance with segregability requirements that is afforded to agencies, the court is satisfied with Mr. Tallarico's statements as they relate to the *Vaughn* index entries concerning the climate rulemaking.

As for the *Vaughn* entries regarding "various rulemakings," the court determines that they would likely support "a belief by a reasonable person that the agency failed to comply with its obligation" to segregate, *Rudometkin*, 140 F.4th at 494 (quoting *Flyers Rts. Educ. Fund, Inc.*, 71 F.4th at 1058), because it is difficult to see how *all* the information in the emails described as containing "discussion of key issues, noteworthy updates, and upcoming meetings," ECF No. 12-4 ¶¶ 15, 17, could chill agency rulemaking. It appears to the court that least some of the noteworthy updates and mentions of upcoming meetings could be reasonably segregated. However, without additional information about these communications, as described above, *see supra* pp. 10-12, the court is ill-equipped to make a final determination on their potential segregability.

\*    \*    \*

Because the SEC has carried its burden of showing that the deliberative-process privilege applies to the withheld records concerning the climate rulemaking and an internal personnel decision, but has failed to demonstrate that the privilege applies to the records regarding "various rulemakings," the court will grant in part and deny in part the SEC's motion for summary judgment.

## IV.    CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that the SEC's motion for summary judgment, ECF No. 12, is **GRANTED** in part and **DENIED** in part.  The parties are directed to file a joint status report proposing next steps in this litigation on or before October 7, 2025.

_____

LOREN L. ALIKHAN
United States District Judge

Date:   September 23, 2025